# IN RE GROVES.

PATENTS; PATENTABILITY; NOVELTY.

No patentable novelty or improvement over the prior art is shown by a claim reciting a road pavement comprising in combination a described concrete base and a semi-elastic, impervious, carpet coat, wearing surface of substantially pure bitumen, in direct and permanent physical union with the concrete, and having superficially applied inert granular material imbedded therein,—in view of Patent 158,415 to Hubbell, showing substantially the same base, slushed or saturated with "thin hot bitumen" dusted over with dry cement, and in view of the fact that sand or other inert material has been used for the purpose by several other patentees, notably Robinson under Patent 496,099.

No. 875.   Patent Appeals.   Submitted November 14, 1913.   Decided January 5, 1914.

HEARING on an appeal from a decision of the Commissioner of Patents refusing a patent on two claims.          *Affirmed.*

The Court in the opinion stated the facts as follows:

Appeal from a decision of the Commissioner of Patents refusing a patent on two claims. Claim No. 1 is sufficient for our purposes here:

"1. A road pavement comprising in combination, an integral, smooth-surfaced, monolithic body of cement concrete of sufficient thickness to carry a maximum designed traffic load without deformation, and a semi-elastic, impervious, carpet coat, wearing surface of substantially pure bitumen, in direct and permanent physical union with said concrete, and having superficially applied inert granular material imbedded therein, said blanket-coat being of sufficient thickness to hold said imbedded granular material in place, and to constitute a resilient, protective, wearing surface for said concrete, substantially as described."

*Mr. W. H. Swenarton, Mr. T. D. Merwin, Mr. W. B. Morton,* and *Mr. J. B. Macauley* for the appellant.

*Mr. Webster S. Ruckman* and *Mr. William R. Ballard* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

According to appellant's present contention his invention consists of a road pavement in two parts, a base and a, wearing surface, the base being composed of a monolithic or integral cement-concrete structure, and the wearing surface being a tough, impervious, semi-elastic covering consisting of substantially pure tar "or other suitable bitumen." In his original specification, however, appellant said his invention related "to a method of surfacing concrete roadways," and that in carrying out his process the roadbed was to be "formed in the usual manner of concrete or the like." He further suggested that by his method "a surface is readily applied to the concrete roadway," and that "it may also be used to repair old brick roadways." The differ-

ence between his original and present conception of the scope of his alleged invention is apparent. Even now, his only specification for the construction of his concrete base is that it shall be of "cement-concrete of such depth, usually about 6 inches, as will carry the maximum load," and that it shall be an integral mass. Each of the three tribunals of the Patent Office that passed upon these claims carefully reviewed the prior art, and unhesitatingly reached the conclusion that appellant has contributed nothing patentably novel thereto.

Owing to appellant's insistence that his alleged invention was not fully understood and appreciated by the Patent Office, we have very carefully reviewed the prior art, as well as the history of his application, but we are forced to the conclusion that the decision appealed from was right. In the second patent to Hubbell (No. 158,415) he shows a foundation which does not materially differ from that required by appellant, for it is constructed of broken stone bound together by cement and coal ashes or sand, "and forming a wearing surface immediately above the surface of the broken stone." After the foundation, with its concrete surface, is completed, it is slushed or saturated with "thin hot bitumen or pitch," and this is dusted over with dry cement. Appellant, however, points out that in his coating "inert granular material" or sand is imbedded in the bitumen. But the use of sand for such a purpose is shown in several prior patents, notably in that to Robinson (No. 496,099), whose foundation was to be prepared with concrete "or any other suitable resisting medium." Instead of putting the bitumen covering directly upon the concrete, as do Hubbell and appellant, Robinson first places bricks upon the concrete, and then treats the bricks with a very hot composition of asphaltum, which is "allowed to flow into their interstices, and also to penetrate the porous material of which the bricks are made, also making a thin covering over the bricks, as well as filling in the spaces between the same." Before this covering becomes thoroughly hardened, Robinson then spreads sand or other inert material to increase its durability. Martineau (August 11, 1834), Kelly

(British patent, No. 5,593), and Cass (British patent, No. 18,-965), all use a coating of bitumen and sand.

The decision will therefore be affirmed.          *Affirmed.*